Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 50420 | **DATE** | 10/22/2001 |
| **CASE TITLE** | Handel vs. Belvedere USA Corp., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, defendants' motion to dismiss is granted in part and denied in part. Counts I, II, and VIII are dismissed, and Wella Corporation and the individual defendants are dismissed from Count VII.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| X | Notices mailed by judge's staff. | OCT 23 2001 date docketed |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | docketing deputy initials |
| | Mail AO 450 form. | 10-23-01 date mailed notice |
| | Copy to judge/magistrate judge. | |
| /SEC | courtroom deputy's initials | Date/time received in central Clerk's Office — mailing deputy initials |

THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

LARRY HANDEL and
LIN HANDEL,

    Plaintiffs,

v.

BELVEDERE USA CORPORATION,
THE WELLA CORPORATION, RONALD
BRITT, MARTIN HOLMES, DWAYNE
TYLER, and TRACY BARGIELSKI,

    Defendants.

No. 00 C 50420

**MEMORANDUM OPINION AND ORDER**

## I. Introduction

On November 30, 2000, plaintiffs Larry and Lin Handel filed an eight-count complaint against defendants Belvedere USA Corporation ("Belvedere"), the Wella Corporation ("Wella"), and individuals Ronald Britt, Martin Holmes, Dwayne Tyler, and Tracy Bargielski, alleging: intentional infliction of emotional distress (Count I); retaliatory discharge (Count II); unlawful interference with rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. (Counts III and V); FMLA retaliation (Counts IV and VI); breach of contract (Count VII); and loss of consortium (Count VIII).

On March 26, 2001, defendants filed a motion to dismiss plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6). In conjunction with their response to the motion to dismiss, plaintiffs requested leave to file an amended complaint, asserting the amended complaint answers defendants' arguments. Because defendants have addressed plaintiffs' amended complaint

in their reply brief (in the interests of expediency), the court grants plaintiffs leave to file the amended complaint and will consider it in addressing defendants' motion. The court has federal question and diversity jurisdiction, see 28 U.S.C. §§ 1331, 1332, and venue is proper pursuant to 28 U.S.C. § 1391, in that a substantial part of the events giving rise to plaintiffs' claims allegedly occurred in this district and division. (Am. Compl. ¶ 2)

## II. **Facts**[1]

Larry Handel[2] worked at Belvedere from 1988 until approximately June 1999; he was the Vice President of the Materials Group from 1992 until his employment terminated. (Am. Compl. ¶ 15) He alleges from 1994 until his termination in 1999, he was: forced to fire, allow, or acquiesce in the constructive discharge of several employees, such discharges being in contravention of his managerial discretion and/or Belvedere's employee Handbook or based on false employee personnel records; forced, without his knowledge, to indirectly participate in the falsification of employee records to a government agency;

---

[1] In considering a motion to dismiss, all well-pleaded factual allegations in plaintiffs' amended complaint are accepted as true and all reasonable inferences are drawn in their favor. See Help At Home, Inc. v. Medical Capital, LLC, 260 F.3d 748, 752 (7th Cir. 2001). The court will grant a motion to dismiss if it appears beyond doubt that plaintiffs cannot prove any set of facts that would entitle them to relief. See id.

[2] Only one count is brought on behalf of Lin Handel. For ease of reference, the court will refer to Larry Handel as "Handel" and will use Lin Handel's full name when referring to her.

2

ridiculed, reprimanded, treated "as if there was something wrong with him," and ultimately terminated or forced into an involuntary resignation when he complained of the allegedly improper behavior; pressured to terminate an employee based on falsified employee records; pressured and coerced to acquiesce in continuing conduct which he believed to be against public policy and which he knew included criminal conduct on at least one occasion; and, threatened that retirement monies would be withheld from him unless and until he resigned. (Id. ¶¶ 16-17, 19-23)

### III. Analysis

#### A. Count I - Intentional Infliction of Emotional Distress

Defendants argue the allegations do not show the requisite level of severe and outrageous conduct necessary for this tort. To state a cause of action for intentional infliction of emotional distress in Illinois, a plaintiff must allege facts which establish: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress or knew there was a high probability his conduct would cause severe emotional distress; and, (3) the defendant's conduct in fact caused severe emotional distress. Doe v. Calumet City, 641 N.E.2d 498, 506 (Ill. 1994). Conduct is of an extreme and outrageous character where "'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"'" Id. at 507 (quoting RESTATEMENT (SECOND)

3

OF TORTS § 46, cmt. d, at 73 (1965)). In the employment setting, the conduct must be truly egregious, see Van Stan v. Fancy Colours & Co., 125 F.3d 563, 567-68 (7th Cir. 1997); Ostendorf v. Elkay Mfg. Co., No. 94 C 50170, 1994 U.S. Dist. Lexis 19414, at *12 (N.D. Ill. Dec. 28, 1994) (Reinhard, J.), because many employment decisions typically are unavoidable and cause stress, see Miller v. Equitable Life Assurance Soc'y, 537 N.E.2d 887, 889 (Ill. App. Ct. 1989).

Courts have found outrageous behavior when defendants threatened to exercise their power to coerce a plaintiff into doing something he would not otherwise do. See, e.g., Graham v. Commonwealth Edison Co., 742 N.E.2d 858, 867 (Ill. App. Ct. 2000). The more power and control a defendant has over a plaintiff, the more likely defendant's conduct will be deemed outrageous. Id. at 866. For example, in Milton v. Illinois Bell Tel. Co., 427 N.E.2d 829, 832 (Ill. App. Ct. 1981), the plaintiff alleged his foreman and other superiors frequently demanded that he falsify work reports in violation of state law. When he refused, they retaliated against him by allegedly harassing him and giving him undesirable work assignments. Id. at 832. The appellate court held his complaint survived a motion to dismiss, stating a reasonable factfinder could conclude the coercion and retaliation the plaintiff suffered was extremely outrageous. Id. at 833.

The court finds cases such as Milton to be inapposite here. The gravamen of Handel's complaint is that he was forced to

4

terminate or acquiesce in the termination or constructive discharge of employees, one of whom was suicidal, where the terminations were based on falsified employee personnel records and/or in contravention of Belvedere's employee handbook. (Am. Compl. ¶¶ 16-17, 20-21) He himself was not coerced into falsifying information.[3] He was a vice president and, although he alleges his authority was undermined as a result of defendants' actions, this is not the type of conduct a reasonable person would find extreme and outrageous. Likewise, the allegedly retaliatory conduct Handel suffered as a result of complaining about the wrongful conduct does not rise to the level of extreme and outrageous conduct. See Rudis v. National Coll. of Educ., 548 N.E.2d 474, 477-78 (Ill. App. Ct. 1989) (administration's continual comments that plaintiff was a cheat and computer hacker and other instances of harassment did not rise to the level of extreme and outrageous conduct).

### B. Count II - Retaliatory Discharge

In Count II, Handel alleges he was terminated in retaliation for his: failure to acquiesce in defendants' alleged criminal conduct; failure to discharge employees based on falsified personnel records; efforts to protect his subordinates in the exercise of their rights under the FMLA and the Illinois

---

[3] Plaintiffs allege Handel was, *without his knowledge,* forced to indirectly participate in the falsification of employee records to a government agency. (Am. Compl. ¶ 17) (emphasis added) If he was unaware of his indirect participation, he cannot show that such behavior caused him severe emotional distress.

5

Unemployment Insurance Act, 820 ILL. COMP. STAT. 405/100 et seq.; and, attempts to protect them from violations of internal company policies and procedures. (Am. Compl. ¶¶ 33-35) He alleges that his termination or constructive discharge violates public policy, giving rise to a wrongful discharge claim.

Defendants argue Count II must fail because Handel alleges he was constructively discharged and a constructive discharge will not support a retaliatory discharge claim. The Illinois Supreme Court has criticized expansion of the tort to include constructive discharge, but has not squarely addressed the issue. See Fisher v. Lexington Health Care, Inc., 722 N.E.2d 1115, 1121 (Ill. 1999) (noting court has thus far declined to recognize a cause of action for retaliatory constructive discharge or retaliatory demotion); Zimmerman v. Buchheit of Sparta, Inc., 645 N.E.2d 877, 880-82 (Ill. 1994) (rejecting argument that tort should be expanded to include retaliatory demotion or discrimination); Hinthorn v. Roland's of Bloomington, Inc., 519 N.E.2d 909, 912 (Ill. 1988) (stating it was not endorsing the constructive discharge concept, but finding the plaintiff had sufficiently alleged she had been discharged). The court cannot decide the issue at this stage of the litigation, however, as Handel has alleged that he was discharged and, in the alternative, that he was constructively discharged.

To make out a claim for retaliatory discharge, a plaintiff must allege: (1) he has been discharged; (2) in retaliation for his activities; and (3) the discharge violates a clear mandate of

public policy. Hinthorn, 519 N.E.2d at 911. A plaintiff can survive a motion to dismiss only if he can show the statute upon which he relies in support of his retaliatory discharge claim embodies a public policy. United States ex rel. Chandler v. Hektoen Inst. for Med. Research, 35 F. Supp. 2d 1078, 1082 (N.D. Ill. 1999). Defendants argue Handel cannot prove the third element in that his allegations, even if taken as true, do not violate Illinois' public policy.

Because the tort of retaliatory discharge is considered to be an erosion of the at-will doctrine, courts narrowly construe the tort. See Zimmerman, 645 N.E.2d at 881, 884. Public policy is implicated when the matter strikes at the heart of a citizen's social rights, duties, and responsibilities, but is denied when only private interests are at stake. Palmateer v. International Harvester Co., 421 N.E.2d 876, 879 (Ill. 1981). Generally, Illinois courts have recognized public policy sufficient to support a retaliatory discharge claim in three contexts: when an employee is fired for reporting his employer's criminal conduct or for cooperating with a criminal investigation involving the employer, see Palmateer, 421 N.E.2d at 876, where an employee is fired for filing a workers' compensation claim, see Kelsay v. Motorola, Inc., 384 N.E.2d 353 (Ill. 1978), or where the statute supporting the tort impacts the health and safety of its citizens in general, see Wheeler v. Caterpillar Tractor Co., 485 N.E.2d 372 (Ill. 1985), cert. denied, 475 U.S. 1122 (1986).

There are no decisions from Illinois courts addressing whether the FMLA supports a state law retaliatory discharge claim, so this court must anticipate how the Illinois Supreme Court would decide this issue. See Hamros v. Bethany Homes & Methodist Hosp. of Chicago, 894 F. Supp. 1176, 1178-79 (N.D. Ill. 1995); McCown v. UOP, Inc., No. 94 C 2179, 1995 U.S. Dist. Lexis 12655, at *26 (N.D. Ill. Aug. 29, 1995). Other federal district courts in Illinois have addressed the issue, and all have held the Illinois Supreme Court would refuse to extend the tort of retaliatory discharge to include claims based on the FMLA. Hamros, 894 F. Supp. at 1179; Dormeyer v. Comerica Bank - Ill., No. 96 C 4805, 1998 WL 729591, at *5-6 (N.D. Ill. Oct. 14, 1998), aff'd, 223 F.3d 579 (7th Cir. 2000); Callozzo v. Office Depot, Inc., No. 97 C 5308, 1998 WL 111628, at *4-5 (N.D. Ill. Mar. 6, 1998); McCown, 1995 U.S. Dist. Lexis 12655, at *24-27. The majority of district courts in other states have similarly declined to recognize a retaliatory discharge claim based on the FMLA. See Cavin v. Honda of Am. Mfg., Inc., 138 F. Supp. 2d 987 (S.D. Ohio 2001) (collecting cases); but see Mora v. Chem-Tronics, Inc., 16 F. Supp. 2d 1192, 1230-32 (S.D. Cal. 1998) (holding that under California law, a plaintiff can bring a claim for wrongful discharge based on the FMLA).

This court joins the majority of courts and holds that, under Illinois law, a plaintiff cannot assert a state law retaliatory discharge claim based on the rights set forth in the FMLA. The FMLA does not involve those matters that strike at the

8

heart of a citizen's social rights, duties, and responsibilities. Dormeyer, 1998 WL 729591, at *5; Callozzo, 1998 WL 111628, at *4. Rather, the FMLA was designed to balance the employer's legitimate interests with the needs of employees in obtaining leave for certain medical conditions and family reasons and, therefore, affects only the private relationship between an employee and employer. Dormeyer, 1998 WL 729591, at *6; Callozzo, 1998 WL 111628, at *4.

In addition, in the seminal Kelsay case, one of the Illinois Supreme Court's reasons for recognizing the tort of retaliatory discharge was because the workers' compensation statute at the time of the plaintiff's discharge did not have a retaliation provision. 384 N.E.2d at 357. The Illinois Supreme Court reasoned that if it did not recognize a cause of action, the plaintiff would be left without a remedy. Id. Unlike Kelsay, the FMLA expressly prohibits retaliation and provides remedies for FMLA violations. See 29 U.S.C. §§ 2615, 2617(a)(1). Thus, there is no reason for expanding the tort to overlap with the FMLA. See Hamros, 894 F. Supp. at 1179; Callozzo, 1998 WL 111628, at *5; McCown, 1995 U.S. Dist. Lexis 12655, at *27; cf. Chandler, 35 F. Supp. 2d at 1083 (Illinois courts would not expand tort of retaliatory discharge to include claim based on violation of False Claims Act because FCA provides remedies). Moreover, if the courts were to recognize a retaliatory discharge claim based on the FMLA, a plaintiff would then be able to circumvent the enforcement scheme and remedial structure Congress

specifically set forth in the FMLA. Cavin, 138 F. Supp. 2d at 998.

As for Handel's retaliatory discharge claim based on the Illinois Unemployment Insurance Act, the appellate court in Fiumetto v. Garrett Enter., Inc., 749 N.E.2d 992 (Ill. App. Ct. 2001), recognized a cause of action for retaliatory discharge based on the Unemployment Insurance Act. However, this court finds Fiumetto to be distinguishable. In Fiumetto, a former employee who was denied unemployment benefits sued her former employer for retaliatory discharge. In recognizing the tort based on the Unemployment Insurance Act, the appellate court analyzed whether she had an implied right of action under that act. Id. at 998. In finding an implied private right of action, the court stated the plaintiff must be a member of the class the statute was intended to benefit, and concluded she was. Id. The court also stated the injury the plaintiff suffered must be one that the statute is designed to protect. Id. at 999. Stating the Unemployment Insurance Act is intended to provide interim economic relief to persons who become unemployed, the court found the plaintiff had suffered such an injury. Id.

Conversely, Handel is not a member of the class the statute was intended to benefit, nor has he suffered an injury the statute is designed to protect. Handel himself was not falsely denied unemployment benefits and, consequently, was not deprived of interim economic relief. The court finds such distinctions to be critical. See Fisher, 722 N.E.2d at 1117-20 (in holding

10

nursing home employees did not have an implied private right of action under Nursing Home Care Act, court found such employees were not members of the class which Act was designed to protect, nor did they suffer the type of injuries Act was intended to prevent). In Fisher, 722 N.E.2d at 1121, the Illinois Supreme Court admonished, once again, that it "has consistently sought to restrict the common law tort of retaliatory discharge." If this court were to extend the tort of retaliatory discharge to a third party such as Handel, he would become a benefactor of a statute which was not designed to protect him. The Fiumetto court found it important to extend the tort to persons denied unemployment benefits to prevent employers from retaliating against them, the same policy reasons present in Kelsay. The court agrees with the Fiumetto court that such a deterrent is important. It would be unnecessary to extend protection to a whistleblower based on a desire to further deter the employer. The court finds that to extend the tort to Handel would violate the Illinois Supreme Court's dictate to narrowly construe the tort.

Given the above analysis, the court need not reach the issue of whether Wella, the parent corporation of Belvedere, or the individual defendants, can be held liable under Count II.

**C. Counts III Through VI - FMLA Claims**

In Count III, Handel alleges on or about June 24, 1999, he requested a leave of absence and thereafter provided written notice that he was exercising his rights under the FMLA. (Am. Compl. ¶ 45) He alleges defendants unlawfully interfered with,

restrained and denied him the ability to exercise his FMLA rights. (Id. ¶ 46) In Count IV, Handel alleges defendants discharged him in retaliation for his attempt to exercise his FMLA rights. (Id. ¶ 50) In Count V, Handel alleges defendants violated the FMLA when they refused to restore him to his position upon his return from his FMLA leave, and refused to make reasonable accommodations so that he could return to work. (Id. ¶ 54-56) In Count VI, Handel alleges defendants discharged him in retaliation for protecting others in their exercise of FMLA rights. (Id. ¶ 59)

With regards to Counts III through V, defendants argue Handel alleged he was terminated on June 23, 1999, but did not request leave until the next day. Defendants reason there can be no FMLA violation if Handel was no longer an employee of Belvedere when he requested the FMLA leave. The court finds defendants' reading of the complaint is overly restrictive, particularly at this stage when all inferences are to be construed in plaintiffs' favor. It simply is not clear from the complaint when Handel was terminated. He alleges "his employment terminated due to events that occurred on or about June 23, 1999." (Am. Compl. ¶ 15) This could mean events occurred on or about June 23, 1999, which led to his discharge at some later date. Other allegations in the complaint support this interpretation, as Handel also alleges he was discharged "on or before July 11, 1999." (Id. ¶ 33) Other allegations infer he

12

was on a leave of absence during his employment at Belvedere when he was discharged. (Id. ¶ 23)

As for Count VI, defendants argue plaintiffs have failed to allege any attempt to oppose practices made unlawful under the FMLA. Plaintiffs have alleged sufficient detail to satisfy the federal courts' liberal notice pleading standards. The complaint is replete with allegations that Handel spoke out about allegedly wrongful conduct and allegedly counseled employees to personally document their attendance records. (Am. Compl. ¶¶ 19-22) Read in plaintiffs' favor, these allegations could be viewed as attempts to oppose practices made unlawful under the FMLA.

### D. **Count VII - Breach of Contract**

Defendants argue plaintiffs have failed to allege any facts supporting the formation of a purported contract. The court disagrees. Handel alleges as part of his continuing employment with Belvedere, he was required to sign a company ethics agreement in exchange for continuation of his employment, to which he agreed and signed. (Am. Compl. ¶ 24)

The court cannot determine, at this stage, whether a valid contract exists. For example, continued employment may or may not supply the necessary consideration for the formation of a valid contract. Compare Doyle v. Holy Cross Hosp., 708 N.E.2d 1140, 1144 (Ill. 1999) (plaintiff's continued employment following amendment to handbook did not constitute consideration) with Duldulao v. St. Mary of Nazareth Hosp. Ctr., 505 N.E.2d 314, 318 (Ill. 1987) (continued employment can constitute

consideration in formation of valid contract). Likewise, the company ethics agreement may or may not contain a clear promise regarding the terms of his employment. See, e.g., Belline v. K-Mart Corp., 940 F.2d 184, 189-90 (7th Cir. 1991) (company's integrity and conflict of interest policy could not support breach of contract claim, as it did not contain a clear promise regarding the terms of his employment). At this stage, Handel has alleged sufficient facts in support of his breach of contract claim.

However, defendants are correct in that the amended complaint does not support a breach of contract action against Wella and the individual defendants. Handel alleges he and Belvedere are the parties who entered into the written company ethics agreement. (Am. Compl. ¶ 61) Thus, Wella and the individual defendants are dismissed from Count VII.

E. **Count VIII - Loss of Consortium**

Defendants argue Lin Handel's loss of consortium claim is dependent on her husband's state law intentional infliction of emotional distress claim and must be dismissed if the husband's state law claim is dismissed. The court agrees, and Count VIII is also dismissed. See, e.g., Bitner v. Pekin Mem'l Hosp., 741 N.E.2d 1075, 1077 (Ill. App. Ct. 2000) (because husband's claims were without merit, wife's claim for loss of consortium, which was founded on husband's claim, was equally untenable).

14

## IV. Conclusion

For the reasons stated above, defendants' motion to dismiss is granted in part and denied in part. Counts I, II, and VIII are dismissed, and Wella Corporation and the individual defendants are dismissed from Count VII.

ENTER:

_____
PHILIP G. REINHARD, JUDGE
UNITED STATES DISTRICT COURT

DATED: October 22, 2001